UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-21949-Cv-Seitz
     (05-20539-Cr-Seitz)
MAGISTRATE JUDGE P. A. WHITE

CLARK B. SAMPSON                    :

          Movant,                   :

v.                                  :        REPORT OF
                                          MAGISTRATE JUDGE
UNITED STATES OF AMERICA,           :

          Respondent.               :
_____

Introduction

     This matter is before this Court on the movant's timely filed
motion to vacate pursuant to 28 U.S.C. §2255, attacking his
conviction and sentence for mail fraud and wire fraud, entered
following a jury verdict in criminal case no. 05-20539-Cr-Seitz.

     The Court has reviewed the motion (Cv-DE#1), the movant's
memorandum of law (Cv-DE#2), the government's response (Cv-DE#10),
the movant's traverse (Cv-DE#11), the Pre-sentence Investigation
Report (PSI), and all pertinent portions of the underlying criminal
file.

Claims

     Construing the movant's arguments liberally as afforded pro se
litigants pursuant to Haines v. Kerner, 404 U.S. 419 (1972), the
movant appears to raise the following claims in his §2255 motion:

     1.   The movant was denied effective assistance of trial
     counsel when counsel failed to object, and appellate
     counsel failed to raise on appeal, that the movant's

sentence was enhanced based on "judge found facts" by a preponderance of evidence. (Cv-DE#2:8).

2.    Whether the District Court erred when it imposed a mandatory and presumed reasonable sentenced of 77 months imprisonment in light of the Supreme Court's clarifying decision in <u>Rita v. United States</u>, 127 S.Ct. 2456 (2007). (Cv-DE#2:15).

<u>Factual History</u>[1]

For about eight months in 2003, Nathan Matalon and Roy Goodman owned and operated a company called Public Telephone Company ("PTC"), which sold customers an opportunity to own and maintain public pay phones for profit. (Cr-DE#233:207-208).

Matalon ran PTC's day to day operations; however neither he nor Goodman were listed as officers of PTC, which was done in effort to conceal the true ownership of the company. (Cr-DE#233:207,209). Initially, Lenore Kaus was listed as the company's president, however, her role was limited as Matalon and Goodman gave her orders. (<u>Id.</u>:210). Some time later, Kaus left the company and Albert Abzug was listed as the company's president, despite not doing work at PTC. (<u>Id.</u>:211-212). Abzug never kept regular hours and was present at the office only sporadically. (<u>Id.</u>). Matalon used a stamp bearing Abzug's name in order to stamp Abzug's signature on PTC checks when Abzug was not present. (<u>Id.</u>:222). Moreover, Matalon was never paid directly from PTC, rather, he was paid through companies called "Jakina Consulting Incorporation" and "American Pay Phone Distributors, LLC" in order to conceal his

[1]The factual history of the underlying criminal case is gleaned from the government's appellate brief, which factual history was adduced from the evidence presented at trial. (Cv-DE#10,Ex.1A-1C).

involvement with PTC. (Id.:213-214). The employees and visitors were aware that neither Kaus nor Abzug had any responsibilities, but rather Matalon ran the company. (Cr-DE#250:162-164; Cr-DE#251:145-146,150).

The movant, Don Manfredonia and Caesar Menendez were employed by PTC as "closers" - salesman whose job was to close the sale to customers who called PTC in response to advertisements of its business. (Cr-DE#233:215). Normally, when a potential customer called PTC, the customer first spoke with a "fronter," who made an initial presentation and then passed the customer to the "closer." (Id.:215). The movant, along with other closers, were paid a commission of 10 to 12 percent of their sales; closers earned twice as much as the fronters. (Id.:217). George Kunkel supervised these salesman and reported to Matalon and Goodman. (Id.:216).

In order to advertise, PTC hired companies to send unsolicited facsimiles of their ads to millions of people, along with newspaper advertisements. (Cr-DE#233:225). The advertisements promised a great business opportunity by owning and operating pay phones, which could earn up to $150,000 per year. (Id.:11-12,179,229; Cr-DE#251:6-7,60-61,117-119). Notwithstanding the promises made in advertisements, PTC customers never earned such profits. (Cr-DE#233:228-229).

The movant, as a closer, would identify himself to the customers as a territory director, which implied that he was responsible for a particular customer's specific geographic area, which was not true. (Cr-DE#245:19-20). He, along with the other closers, described that the initial investment opportunity of owning seven pay telephones guaranteed a net profit of $300 per phone per month. (Cr-DE#233:15-17,76-77,180; Cr-DE#245:23; Cr-DE#250:58; Cr-DE#251:64-65). PTC customers were assured that a PTC

3

referred "locator service" would, for free, relocate any phones not earning the guaranteed profit of $300 per month. (Cr-DE#250:58-59; Cr-DE#251:14-15,66,72). The movant further informed the customers that PTC was a partner of AT&T in this venture, which was also untrue. (Cr-DE#250:61-63, 136-137).

In reality, no PTC customer ever made $300 and the locations available to PTC customers were unsuccessful. (Cr-DE#245:25). The movant was aware of the actual profitability of the pay phones. (Id.:25).

Subsequent to the initial contact, customers were sent PTC's information package, for which they were charged shipping costs. (Cr-DE#233:18-21,181,230; Cr-DE#248:128-29; Cr-DE#251:10-12,116-126). The contents therein for each potential customer was the same and the movant was familiar with the packages. (Cr-DE#233:230,233, Cr-DE#251:181-182). The package included a document which purported to be an "Industry Report Summary" from Raymond James and Associates, Inc., which was four pages long and with no date, which was intentionally left out with the knowledge of Matalon, Goodman and Kunkel, because the report was nine years old and the profitability of pay phones had drastically decreased with the advent of cellular phones. (Cr-DE#245:13-16; Cr-DE#248:130). Moreover, the package included a letter purporting to be from Lester Hark, an account executive at AT&T, referring to PTC as "one of [AT&T's] premier partners offering the best value in services." (Cr-DE#233:234-236; Cr-DE#248:131; Cr-DE#251:138-139). As may be recalled, PTC was not in any partnership with AT&T. (Cr-DE#250:136-137).

Notwithstanding, Lester Hark, an authorized seller of AT&T telecommunications services was solicited by Matalon and Kunkel to draft such a letter for PTC. (Cr-DE#250:123-126,131,140). PTC

4

referred its customers to Hark so that he could sell them AT&T phone services, as a result he was paid $20 per customer, which payments were not disclosed to his superiors. (Cr-DE#250:125,128). The letter submitted by Hark was previously approved by his superiors, however, the version contained in the PTC package was altered after delivering it to PTC. (Cr-DE#250:131-33,136-137). The letter falsely stated that Hark, as an AT&T representative, ensured that PTC met the highest standard of professionalism.

Eventually, AT&T contacted PTC and demanded that PTC stop using the letter, stating that AT&T was not a partner of PTC and threatening legal action otherwise.

Moreover, the PTC package contained a certificate attesting that PTC was registered with the "National Business Opportunity Bureau ("NBOB")." (Cr-DE#245:11-12). Registration with the NBOB required nothing more than submitting a form and paying a fee. (Id.:12). PTC was not a member of the Better Business Bureau – its application was rejected. (Id.:12-13).

After the closers reviewed, over the phone, the PTC information package with the customers they suggested that customers with any questions call Sol Barry Aldoroty, purportedly a satisfied customer, as a reference. (Cr-DE#233:75; Cr-DE#245:35). Aldoroty was Matalon's uncle, who previously worked for People's Telephone Company and later himself, installed and operated pay phones and created software to manage pay telephones. (Cr-DE#250:155-157; Cr-DE#245:34).

At first, Aldoroty provided potential PTC customers with truthful information regarding his experience in the pay telephone industry. (Cr-DE#250:157-158). However, at a later time, Matalon and Goodman asked him to say not only that he was operating seven

5

pay phones purchased from PTC, but also to mention how well he was doing. (Cr-DE#249:171;Cr-DE#250:158). Aldoroty understood that he was not providing truthful information, nevertheless he agreed to participate. (Cr-DE#250:164).

After Aldoroty spoke with the customers, he would contact the corresponding closer at PTC and informed the closer of the customer's interest. (Cr-DE#250:165-166). He discussed with the movant what his story was; however, sometimes the movant would ask Aldoroty to tailor his story to address a particular customer's concerns. (Cr-DE#250:165-168).

Aldoroty was paid $25 by PTC to speak with each referred customer; however, he never informed the customers of his payment. (Cr-DE#245:36; Cr-DE#250:159-161,164).

The movant's style as a closer was to emphasize to customers that he hoped they were beginning a long-term business relationship and he hoped they would work together for many years. (Cr-DE#245:141).

After making the initial investments of $15,000 or more, PTC customers found that necessary equipment and installation required additional expenses; the phones did not earn the promised $300 per month profit; the locator services referred to by PTC did not relocate the phones as promised; assistance was not provided by the locator services or PTC as promised; and the customers complaints and calls went unanswered. (Cr-DE#233:37-40; Cr-DE#249:12-13,16-19,54-55,74; Cr-DE#250:29-33,37-38,40-41,66-68; Cr-DE#251:15-22, 52-53,76-80). Rather, customers learned that phones earned around $40 to $70 or less a month. (Cr-DE#233:38-40; Cr-DE#250:39, 42-43, 68-69; Cr-DE#251:20,22,80).

Karen Baxter, PTC's receptionist, received numerous complaint calls from customers and passed the messages along to the movant, and the other closers, but the phone calls were never returned. (Cr-DE#251:141-142). Rather, the movant requested that Baxter make excuses and to stop passing on customer complaint calls or messages to them. (Cr-DE#245:26, Cr-DE#251:140).

Matalon, Kunkel, Manfredonia and the movant knowingly caused to be delivered by private and commercial interstate carrier, as well by wire communications in interstate commerce, materially false and fraudulent representations and promises to potential business opportunity purchasers in order to unjustly enrich themselves. (PSI¶16). For example, on February 19, 2003, the movant was in contact by telephone with J.H. in Appelton, Wisconsin in an effort to have J.H. become a PTC customer. (PSI¶18). The movant forwarded J.H., via U.P.S., a PTC information package including the movant's business card reflecting he was a PTC employee. (Id.). Thereafter, on March 3, 2003, the movant forwarded to J.H. by facsimile, a credit card authorization form from the Southern District of Florida to Wisconsin. (Id.). In total, during the conspiracy, the movant had 59 closings for a total of $695,625.00. (PSI¶21). The total conspiracy and scheme to defraud resulted in losses to victims totaling approximately $2,346,834.25. (PSI¶23).

## Procedural History

The procedural history of the underlying criminal history reveals that the movant was charged with one count of conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. §§1341 and 1343, all in violation of 18 U.S.C. §1349 (Count 1), three substantive counts of mail fraud in violation of 18 U.S.C. §§1341 and 2 (Counts 4, 11, 13), and four counts of wire fraud in

violation of 18 U.S.C. §§1343 and 2 (Counts 16, 17, 31 and 33). (Cr-DE#3).

On March 20, 2006, the movant proceeded to trial (Cr-DE#148), wherein he was convicted of Counts 11, 13, 31 and 33, the substantive mail and wire fraud charges. (Cr-DE#177). He was acquitted of Counts 1, 4, 16 and 17. (Cr-DE#177).

A PSI was prepared in anticipation of sentencing, wherein the probation officer determined that the movant had a base offense level of 6. (PSI¶32). However, because the loss was more than $400,000 but not more than $1,000,000, the offense level was increased by 14 levels. (PSI¶33). Moreover, because the offense involved more than 50, but less than 250 victims, the offense level was increased by four levels. (PSI¶34). Thus, the movant's total offense level was set at 24. (PSI¶41). The movant had a subtotal of nine criminal history points. (PSI¶62). Specifically, he had six criminal history points pursuant to U.S.S.G. §4A1.1(c), however, under §4A1.1(c), only four points could be counted. (Id.). Therefore, the movant had a total of seven criminal history points and a criminal history category of IV. (Id.). Based on a total offense level of 24 and a criminal history category of IV, the guideline imprisonment range was 77 to 96 months. (PSI¶112).

Thereafter, on June 20, 2006, the movant was sentenced to 77 months imprisonment as to each count, to run concurrently; three years of supervised release, $345,991.00 in restitution and a $400 special assessment. (Cr-DEs#218,237). The Clerk entered judgment on June 21, 2006. (Cr-DE#219).

On June 28, 2006, the movant filed a timely notice of appeal

(Cr-DE#225), wherein the following claims were raised:[2]

> 1.   Whether the evidence presented at trial was sufficient to establish the offenses of mail and wire fraud stemming from Sampson's sale of pay phones, where the government failed to prove beyond a reasonable doubt that Sampson knowingly participated in a fraudulent scheme, and did so with specific intent to defraud.
>
> 2.   Whether the district court abused its discretion in denying Sampson's motion for mistrial following the admission of evidence by a key government witness suggesting Sampson had engaged in similar fraudulent conduct in the past, in violation of a court order precluding such evidence.
>
> 3.   Whether the imposition of a 77-month sentence exceeded that necessary to fulfill the purposes of 18 U.S.C. §3553(a) and was unreasonable, where the relevant statutory sentencing criteria, including circumstance unique to both the offense and the defendant, reflect considerations warranting a lesser term of incarceration.

Subsequent to the filing of the appeal, an amended judgment, which included the restitution amount, was entered on July 17, 2006. (Cr-DE#237).  On June 14, 2007, the Eleventh Circuit, per curiam, affirmed the movant's sentence and conviction. (Cr-DE#269).  The movant filed a petition for writ of certiorari, which, on November 5, 2007, was denied by the Supreme Court. Sampson v. United States, 128 S.Ct. 541 (2007). Thus, the judgment of conviction in the underlying criminal case became final at the latest on November 5, 2007, when certiorari review was denied by the Supreme Court.[3]

---

[2]The claims are gleaned from the appellate court's written, but unpublished opinion, United States v. Sampson, 237 Fed. Appx. 503 (11th Cir. 2007) (Cr-DE#269), as well as, from the movant's initial brief on appeal, which can be found on Westlaw, a legal research database at United States v. Sampson, 2007 WL 2986751 (11th Cir. 2007).

[3]The Supreme Court has stated that a conviction is final when a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied.  Griffith v. Kentucky, 479 U.S. 314, 321, n.6 (1986); accord, United

See <u>United States v. King, et al.</u>, 66 Fed. Appx. 844 (11th Cir. 2003)(table), <u>cert. den'd</u>, 540 U.S. 902 (2003). The motion to vacate was timely filed, less than one year later, on July 6, 2008. (Cv-DE#1).

Discussion of Claims

It should be noted that **claim one,** could have been, but was not raised on direct appeal. Notwithstanding, construing the argument made by the movant in support thereof, he appears to argue that counsel was ineffective for failing to pursue the claim. A claim of ineffective assistance of counsel may constitute cause for failure to previously raise the issue. <u>United States v. Breckenridge</u>, 93 F.3d 132 (4th Cir. 1996). Attorney error, however, does not constitute cause for a procedural default unless it rises to the level of ineffective assistance of counsel under the test enunciated in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984); <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986). Thus, the claim will be identified and treated in this Report, <u>infra</u>.

In order for the movant to prevail on a claim of ineffective assistance of counsel, he must establish that 1) his counsel's representation fell below an objective standard of reasonableness; and 2) but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been different. <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). A court may decline to reach the performance prong of the standard if it is convinced that the prejudice prong cannot be satisfied. <u>Id.</u>

---

States v. Kaufmann, 282 F.3d 1336 (11th Cir. 2002). Once a judgment is entered by a United States court of appeals, a petition for writ of certiorari must be filed within 90 days of the date of entry. The 90 day time period runs from the date of entry of the judgment rather than the issuance of a mandate. <u>Sup.Ct.R</u>. 13; <u>see</u> <u>also</u>, <u>Close v. United States</u>, 336 F.3d 1283 (11th Cir. 2003).

at 697; <u>Waters v. Thomas</u>, 46 F.3d 1506, 1510 (11th Cir. 1995). Prejudice in the sentencing context requires a showing that the sentence was increased due to counsel's error. <u>Glover v. United States</u>, 531 U.S. 198, 203-04 (2001).

Moreover, review of counsel's conduct is to be highly deferential. <u>Spaziano v. Singletary</u>, 36 F.3d 1028, 1039 (11th Cir. 1994), and second-guessing of an attorney's performance is not permitted. <u>White v. Singletary</u>, 972 F.2d 1218, 1220 ("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); <u>Atkins v. Singletary</u>, 965 F.2d 952, 958 (11th Cir. 1992). Because a "wide range" of performance is constitutionally acceptable, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." <u>Rogers v. Zant</u>, 13 F.2d 384, 386 (11th Cir. 1994).

In **claim one**, the movant asserts he was denied effective assistance of trial counsel when counsel failed to object, and appellate counsel failed to raise on appeal, that the movant's sentence was enhanced based on "judge found facts" by a preponderance of evidence. (Cv-DE#2:8). The movant appears to argue that the court considered facts not admitted by him or proven beyond a reasonable doubt in establishing his guideline sentence.

Review of the PSI reveals that a 14 level enhancement to the movant's base offense level was added, pursuant to U.S.S.G. §2B1.1(b)(1)(H), because the loss was more than $400,000 but not more than $1,000,000. (PSI¶32). Moreover, an additional 4 levels was added to the base offense level, pursuant to U.S.S.G. §2B1.1(b)(2)(B), because the offense involved more than 50 but less than 250 victims. (PSI¶34).

The law is clear that "sentencing enhancements do not punish a defendant for crimes of which he was not convicted, but rather increase his sentence because of the manner in which he committed the crime of conviction." United States v. Watts, 519 U.S. 148, 154 (1997)). The argument raised herein, moreover, has been specifically rejected by the Eleventh Circuit which has determined that nothing in United States v. Booker, 543 U.S. 220 (2005) suggests that sentencing judges cannot "continue to consider relevant acquitted conduct when applying the Guidelines in an advisory manner, 'for when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant.'" Id. (quoting Booker, 543 U.S. at 233); see also, United States v. Rodriquez, 398 F.3d 1291, 1301 (11th Cir. 2005)(explaining that the use of extra-verdict enhancements in an advisory guidelines system is not unconstitutional). The Eleventh Circuit has concluded that the Watts decision therefore survives Booker. Id.

In this case, the district court applied the sentencing guidelines as advisory, and found the facts to support the fourteen level enhancement by a preponderance of the evidence, thereby overruling counsel's objection thereto. (Cv-DE#10,Ex.4A-4C:12-28). Although, defense counsel did not challenge the number of victims directly, counsel, during the sentencing explained, that she had "challenged it in the sense that if the Court found that he [the movant] was not responsible for the entire amount, that he was only responsible for the 26,000, then he wouldn't have more than 50 victims. But based on the Court's current ruling then - - although I preserve my objection with regard to the overall scheme, I would agree that if the Court finds there were 59 sales, then that enhancement would be appropriate." (Id.:27-28). As such, defense

counsel strategically decided to forego an objection to the number of victims sentence enhancement.

Generally, tactical or strategic choices by counsel cannot support a collateral claim of ineffective assistance of counsel. United States v. Costa, 691 F.2d 1358 (11th Cir. 1982); Coco v. United States, 569 F.2d 367 (5th Cir. 1978). Even if a strategic decision appears incorrect in retrospect, it can constitute ineffective assistance only "if it was so patently unreasonable that no attorney would have chosen it," Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983), cert. denied, 464 U.S. 1663 (1984), or if the petitioner can demonstrate a "reasonable probability that the verdict [otherwise] would have been different." Kimmelman v. Morrison, 477 U.S. 365, 375 (1986); see also, Nero v. Blackburn, 597 F.2d 991 (5th Cir. 1979)(A defendant may prevail on an ineffective assistance claim relating to trial strategy if he can show that counsel's conduct is so egregious as to raise an inference that it could not reasonably be part of any legitimate strategy.). No such showing had been made here.

The U.S. Sentencing Guidelines provides that "[I]n determining the base level of the charged offense, the district court must consider as relevant all conduct actually undertaken by, or taken at the direction of, the defendant, §1B1.3(a)(1)(A), and in the case of a conspiracy, all acts by other participants that were both reasonably foreseeable and in furtherance of the conspiracy, §1B1.3(a)(1)(B)." See United States v. Matthews, 168 F.3d 1234, 1247 (11th Cir. 1999).

The movant argued at sentencing that there is a lack of sufficient evidence to find that he participated in a joint criminal conduct, as evidenced by the jury's verdict of an

acquittal of the conspiracy charges, and therefore, he should not be held responsible for the overall loss from the conspiracy, but only that which relates to his own conduct. However, as discussed above, the facts adduced at trial revealed otherwise.

Moreover, the Supreme Court in <u>Rita v. United States</u>, 127 S.Ct. 2456 (2007), a case the movant cites in support of his argument, stated that the "Court's Sixth Amendment cases do not automatically forbid a sentencing court to take account of factual matters not determined by a jury to increase the sentence in consequence. Nor do they prohibit the sentencing judge from taking account of the Sentencing Commission's factual findings or recommended sentences." <u>Id.</u> at 2456-66. Specifically, the Court has held that "'any fact other than a prior conviction, which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or provided a jury beyond a reasonable doubt.'" <u>Id.</u> at 2456.

The statutory maximum for each of the counts the movant was found guilty was 20 years. The movant was sentenced to 77 months imprisonment, almost 6.5 years. It is evident that the movant was not sentenced beyond the 20-year statutory maximum. As such, the District Court judge was permitted to find facts, by a preponderance of the evidence, that enhanced the movant's sentence.

Moreover, it is clear from the record that defense counsel not only filed objections to the sentencing enhancements (Cr-DE#215), but counsel also vigorously pursued the issue during the sentencing hearing. (Cv-DE#10,Ex.4A-4C). Under these circumstances, the court properly applied the enhancements. Consequently, no deficient

14

performance or prejudice has been established arising from trial counsel's failure to further pursue this issue. He is thus entitled to no relief on this claim.

Likewise, to show that his appellate counsel was ineffective, the movant must establish that appellate counsel performed deficiently and that the deficient performance resulted in prejudice. Joiner v. United States, 103 F.3d 961 (11th Cir. 1997). To determine prejudice, we must review the merits of an omitted claim. If we find that the omitted claim would have had a reasonable probability of success on appeal, then counsel's performance necessarily resulted in prejudice. Id.; citing Heath v. Jones, 941 F.2d 1126, 1136 (11th Cir. 1991). The movant argues that counsel's failure to raise on appeal that the movant's sentence was enhanced based on "judge found facts" by a preponderance of evidence was deficient performance, thus resulting in prejudice. (Cv-DE#2:8).

As discussed above, the movant would not have had a reasonable probability of success on the claim and thus, he has failed to establish prejudice and is entitled to no relief on this claim.

In **claim two**, the movant asserts the District Court erred when it imposed a mandatory and presumed reasonable sentenced of 77 months imprisonment in light of the Supreme Court's clarifying decision in Rita v. United States, 127 S.Ct. 2456 (2007). (Cv-DE#2:15). The movant further argues that because the Solicitor General, in its memorandum for the United States to the Supreme Court on Petition for Writ of Certiorari, conceded to the movant's arguments, his sentence is therefore unreasonable and should be vacated. (Cv-DE#2:15-16). The Solicitor General's memo stated:

> In Rita v. United States, 127 S.Ct. 2456 (2007), this Court held that courts of appeals may apply a presumption of reasonableness in reviewing within-range sentences, id. at 2467, but that district court's "do not enjoy the benefit of a legal presumption that the Guidelines sentence should apply." Id. at 2465. The court of appeals did not have the benefit of this Court's decision in Rita. Accordingly, the petition for a writ of certiorari should be granted, the judgment vacated, and the case remanded for further consideration in light of Rita, subject to applicable doctrines of waiver, forfeiture, and harmless error (Cv-DE#10,Ex.12),

Likewise, he argues that although the Supreme Court denied certiorari review, that decision has no bearing on the merits of his case. (Id.).

First, an issue resolved against a movant on direct appeal cannot be relitigated in a §2255 motion. United States v. Frady, 456 U.S. 152, 166-168 (1982); Dermota v. United States, 895 F.2d 1324 (11th Cir. 1990), cert. denied, 498 U.S. 837 (1990); United States v. Johnson, 615 F.2d 1125, 1128 (5th Cir. 1980); United States v. Kalish, 780 F.2d 506, 508 (5th Cir. 1986). Only if there has been an intervening change in the law can an issue decided on direct appeal be relitigated in a motion to vacate. See generally Davis v. United States, 417 U.S. 333 (1974). The movant has shown no change of circumstances. Although the movant argues that pursuant to Rita, a case decided seven days after the Eleventh Circuit affirmed his conviction and sentence, his sentence should be vacated, the Supreme Court's decision in Rita is not a new legal theory that qualifies as an exception to the rule against relitigation. Pursuant to United States v. Nyhuis, 211 F.3d 1340 (11th Cir. 2000), a rejected claim does not merit rehearing on a different, but previously available legal theory. (Id.). The movant has failed to establish that this legal theory was previously unavailable to him, especially in light of appellate counsel's

argument pursuant to the Court's granting certiorari in <u>Rita</u>, which challenged the consideration of a within-guidelines sentence as presumptively reasonable.  Moreover, <u>Rita</u> only serves to clarify and/or elaborate the Supreme Court's holding in <u>Booker</u>, which was decided in 2005, prior to when the movant filed his direct appeal.

The substantive issue underlying this ineffective assistance of counsel claim was raised and rejected on direct appeal. In his appellate brief, the movant argued in part:

> The foregoing reflect the district court's misapprehension of the guidelines as presumptively reasonable, contrary to the sentencing statute and the constitutional principles enunciated in Booker.[4] This improperly presumptive reliance on the guideline range, particularly when viewed in light of the remaining statutory sentencing factors in this case, constricted the court's exercise of its full discretion, resulting in a sentence lacking in the components of reasonableness.

(Cv-DE#10,Ex.7:11-17).

In rejecting the claim, the Court of Appeals found as follows:

> Finally, Sampson argues that his sentence is unreasonable because the district court failed to consider properly his relationship with his family and his recent services to the community, and thus refused to impose a sentence below the Guidelines range. The record demonstrates that the district court properly calculated the Guidelines sentence, heard testimony on mitigating factors, and took

---

[4]In the appellate brief, the movant's counsel inserted a footnote stating:

The Supreme Court has recently granted certiorari in two cases encompassing challenges to the consideration of a within-guidelines sentence as presumptively reasonable. <u>See Rita v. United States</u>, 177 Fed. Appx. 357 (4th Cir. 2006)(unpublished), cert. granted, No. 06-5754 (U.S. Nov.3, 2006); <u>United States v. Claiborne</u>, 439 F.3d (8th Cir. 2006), cert. granted, No. 06-5618, 2006 WL 2187967 (U.S. Nov. 3,2006).

the U.S.S.G. §3553(a) factors into account when making its determination. In light of Sampson's extensive criminal history and the extensive financial loss to the victims, we cannot say that Sampson has met his burden of establishing that the sentence was unreasonable. <u>United States v. Talley</u>, 431 F.3d 784, 788 (11th Cir. 2005). Accordingly, his sentence, and the underlying conviction, is affirmed.

(Cr-DE#269).

Presentation of this claim in this §2255 proceeding adds nothing of substance which would justify a different result. The claim is procedurally barred. <u>See</u> <u>United States v. Nyhuis</u>, 211 F.3d 1340 (11th Cir. 2000)(Defendant was not entitled to collateral relief based on due process claim that was mere recharacterization of double jeopardy and immunity claim that was rejected on direct appeal), <u>citing</u>, <u>United States v. Rowan</u>, 663 F.2d 1034, 1035 (11th Cir. 1981). A rejected claim does not merit rehearing on a different, but previously available legal theory. <u>United States v. Nyhuis</u>, 211 F.3d at 1343, <u>citing</u>, <u>Cook v. Lockhart</u>, 878 F.2d 220, 222 (8th Cir. 1989). Consequently, the movant is entitled to no relief on this claim.

If it is determined that the movant is not, in this collateral proceeding, raising a claim that was previously litigated, his arguments, are not only procedurally barred, but also fail on the merits.

First, if it is determined that this claim was not raised on direct appeal, it is procedurally barred from review in this collateral proceeding unless the movant can show cause for the default and actual prejudice, <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977), or a fundamental miscarriage of justice. <u>Engle v. Isaac</u>, 456 U.S. 107 (1982).

The movant, in this collateral proceeding, neither shows cause for failing to raise the issue on direct appeal nor does he show any actual prejudice as a result therefrom. Notwithstanding, he argues that because Rita was decided while his case was pending and as a result of its decision, his sentence should be vacated, this claim will be addressed on the merits below.

To the extent the movant argues that the sentencing guidelines were imposed in a mandatory fashion, thus violating the holding of United States v. Booker, 543 U.S. 220 (2005), this claim is without merit. (Cv-DE#2:17).

Pursuant to Booker, "the Sixth Amendment right to trial by jury is violated where under a mandatory guidelines system a sentence is increased because of an enhancement based on facts found by the judge that were neither admitted by the defendant nor found by the jury." United States v. Rodriquez, 398 F.3d 1291, 1298 (11th Cir.) (emphasis in original), cert. den'd, 545 U.S. 1127 (2005). The Eleventh Circuit has held that there are two types of Booker errors: (1) constitutional error resulting from enhancements based on judicial fact-finding, and (2) non-constitutional statutory error resulting from mandatory application of the Guidelines. See United States v. Shelton, 400 F.3d 1325, 1330-31 (11th Cir. 2005).

In this case, there was neither type of Booker error. Contrary to the movant's arguments, the district court explicitly stated that it was applying the guidelines in an advisory, and not in a mandatory manner. (Cr-DE#10,Ex.9-11). Moreover, the district court calculated the sentencing range consistent with United States v. Crawford, 407 F.3d 1174 (11th Cir. 2005), and then stated that it had considered all of the 18 U.S.C. §3553(a) factors before

imposing its sentence. (<u>Id.</u>:48). Accordingly, the district court satisfied its obligations under <u>Booker</u>, and there was no <u>Booker</u> error, of either a constitutional or statutory variety. Under these circumstances, the District Court did not err.

Second, to the extent the movant argues that pursuant to <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), together with <u>Blakely v. Washington</u>, 524 U.S. 296 (2004) and its progeny, <u>United States v. Booker</u>, 543 U.S. 220 (2005), the movant's sentence was enhanced based on facts which have not been presented to a jury or admitted by the defendant, this claim is also without merit. (Cv-DE#2:18).

The Eleventh Circuit has held that when a district court imposes a sentence which falls below the lowest possible statutory maximum, <u>Apprendi</u> and <u>Booker</u> are not implicated. <u>United States v. Sanchez</u>, 269 F.3d 1250 (11th Cir. 2001)(<u>en banc</u>), <u>abrogated on other grounds by</u>, <u>United States v. Duncan</u>, 400 F.3d 1299, 1308 (11th Cir. 2005); <u>see also</u> <u>United States v. Marpoe</u>, 153 Fed.Appx. 618 (11th Cir. 2005)(defendant's sentence affirmed because it fell within the range authorized by the facts established at the change of plea proceedings, and therefore, <u>Apprendi</u> and <u>Booker</u> not applicable). In this case, the probation officer determined that as to each of Count 11 and 13, the maximum statutory term of imprisonment was 20 years. (PSI¶112). As to each of Count 31 and 33, the statutory maximum term of imprisonment was also 20 years. (<u>Id.</u>). Thus, because the extra verdict enhancements found on a preponderance of the evidence, by the judge, did not exceed the statutory maximum, neither <u>Appendi</u> nor <u>Booker</u> are implicated.

Moreover, to the extent the movant argues that the District Court judge failed to consider the 18 U.S.C. §3553(a) factors in determining his sentence, this claim is also without merit. (See

20

Cv-DE#2:18-20). As addressed _supra_, the sentencing hearing transcript reveals that the District Court judge analyzed all of the factors that the Court must consider under 3553, specifically the judge stated:

> The Court has considered, as I said, all of the statements of the parties as to what would be the proper sentence in this case. In analyzing all of the factors that the Court must under 3553, particularly the nature and the circumstances of the offense, that would include the long time that Mr. Sampson did work at this from January through September, and the complaints did come in early on, and the history and the characteristics of the defendant, which include a particular concern for the Court the prior conviction for the mail fraud only nine years ago -- or nine years before this offense, the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and provide just punishment for the offense, to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant, taking those into consideration but at the same time -- I would be inclined to go more with the government's recommendation, or at least midway. However, I do also believe that I will be merciful as Miss Brinson [the movant's mother] has asked me to be. And therefore, I will sentence at the low end of the guidelines at [77] months.

(Cv-DE#10,Ex.4A-C:48). Accordingly, the movant fails to establish that the District Court failed to consider the 18 U.S.C. §3553(a) factors.

Finally, to the extent the movant argues that the District Court Judge treated the advisory Federal Sentencing Guidelines range as presumptively reasonable, in violation of _Rita_, this claim is also without merit. (Cv-DE#2:15-25). Specifically, he argues that pursuant to _Rita_, a district judge must make an independent determination as to whether the Federal Sentencing Guidelines are reasonable. (_Id._:19).

The Eleventh Circuit, while referring to <u>Rita</u>, has set forth the criteria needed to assist the District Court to impose a fair sentence, this process assures that the district court judge does not make any presumptions. <u>See</u> <u>United States v. Livesay</u>, 525 F.3d 1081, 1089-90 (11th Cir. 2008). The district court duties include:

> After the Supreme Court's decision in <u>Booker</u> and <u>Gull</u> [<u>Gull v. United States</u>, 128 S.Ct 586 (2007)], the district courts are still required to correctly calculate the advisory Guidelines range. '[A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the §3553(a) factors to determine whether they support the sentence requested by a party.' <u>Gall</u> also instructs that the district court decides that a sentence outside of the Guidelines is warranted, it 'must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'

<u>Livesay</u>, 525 F.3d at 1089-90.

Although the movant is correct that the Supreme Court in <u>Rita</u> stated that "the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply," it appears the movant misplaced the Court's finding and its application to his own criminal case. <u>See</u> <u>Rita</u>, 127 S.Ct. at 2465.

The Court in <u>Rita</u> held that "the presumption before us is an *appellate* court presumption." <u>Rita</u>, 127 S.Ct. at 2465. It goes on to say "[g]iven our explanation in *Booker* that appellate 'reasonableness' review merely asks whether the trial court abused its discretion, the presumption applies only on appellate review." <u>Id.</u> Thereafter, the Court explained that because the presumption only lies within the appellate court, there is a process which the district court must adhere to, since it does not have the same

22

presumption as afforded to the appellate court. Id. Specifically, the Supreme Court stated:

> The sentencing judge, as a matter of process, will normally begin by considering the presentence report and its interpretation of the Guidelines. 18 U.S.C. §3552(a); Fed. Rule. Crim. Proc. 32. He may hear arguments by prosecution or defense that the Guidelines sentence should not apply, perhaps because (as the Guidelines themselves foresee) the case at hand falls outside the 'heartland' to which the Commission intends individual Guidelines to apply, USSG §5K2.0, perhaps because the Guidelines sentence itself fails properly to reflect §3553(a) considerations, or perhaps because the case warrants a different sentence regardless. See Rule 32(f). Thus, the sentencing court subjects the defendant's sentence to the thorough adversarial testing contemplated by federal sentencing procedure. See Rules 32(f), (h), (i)(C) and (i)(D); see also Burns v. United States, 501 U.S. 129, 136, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991)(recognizing importance of notice and meaningful opportunity to be heard at sentencing). In determining the merits of these arguments, the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply. Booker, 543 U.S. at 259-260, 125 S.Ct. 738.

Rita, 127 S.Ct. 2465.

Accordingly, although the movant is correct that the district court does not enjoy the benefit of a legal presumption of reasonableness, however, he is incorrect in that the district court in his criminal case made such a presumption. As is evident from the sentencing record, the district court prior to imposing the movant's sentence, considered all objections to the PSI and counsels arguments thereto; statements made by numerous family members and the movant; the PSI report including, the movant's personal history; and the 3553(a) factors. In considering the foregoing, it is evident that the District Court did not treat the advisory Federal Sentencing Guidelines range as presumptively

reasonable. As such, the movant's claim is without merit.

### Evidentiary Hearing

Finally, the movant's request for an evidentiary hearing on his claims should be denied. A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations or affirmatively contradicted by the record. See Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989), citing, Guerra v. United States, 588 F.2d 519, 520-21 (5th Cir. 1979). As previously discussed in this Report, the claims raised are unsupported by the record or without merit. Consequently, no evidentiary hearing is required.

### Conclusion

It is therefore recommended that the motion to vacate be denied.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Signed this 8th day of July, 2009.

_____

UNITED STATES MAGISTRATE JUDGE

cc:  Clark B. Sampson, Pro Se
     Reg. No. 49807-004
     FCI - Miami
     Federal Correctional Institution
     P.O. Box 779800
     Miami, FL 33177

24

Anne Ruth Schultz, AUSA
United States Attorney's Office
99 NE 4th Street
Miami, FL 33132

Jose A. Bonau, AUSA
United States Attorney's Office
99 NE 4th Street
Miami, FL 33132